Good morning everyone. We have a number of cases that have been submitted or deferred today and I won't read through all of them and that has left Kirola v. City & County of San Francisco as our only case for the morning and so we will please the court. The court's recent order instructed the parties to focus on injunctive relief and plaintiffs believe that injunctive relief is appropriate. Under governing law newly constructed or altered facilities must comply with ADAG. The ADA Title 2 regulations and this court's precedent require that ADAG violations in new or altered facilities be remediated and the regulation that I'm thinking of in particular is 28 CFR section 35.151C5 and then the most applicable Ninth Circuit precedent would be Pierce v. County of Orange 526F3-1190. The district court's findings and the city's admissions confirm that there are over 1,000 ADAG violations in the city's newly constructed or altered facilities. In this regard it's important to recall that the district court's second opinion adopts the findings of fact contained in its first opinion and that's at footnote 3. So in the first opinion at 74 F sub 3rd the district court found that there are 400 ADAG violations in the city's libraries and recreation facilities. The required modification quote-unquote and that's at page 1230 of the first district court opinion. How do we get to the 400 ADAG violations just to fill in the gap? Plaintiffs experts inspected a sample of the city's blue dot facilities. Those are new or altered after 2000 and they identified a whole series of what city's experts and the mayor's office on disability reviewed plaintiffs list of barriers and agreed with 400 items. So there's 400 ADAG violations in the city's libraries and recreation facilities that are new or altered. That's major category of city facilities. Let me ask you a question. If I look at what the main library there was lack of insulation on supply and drain lines in one West room, absence of semi ambulatory stalls in three restrooms, inadequate knee space under the sink in the Latino Hispanic meeting room bathroom, two instances of inadequate door clearance, at least ten doors that require too much force to open, insufficient space in the video booth, and a lack of companion seating in the auditorium. But otherwise St. Mary's Playground there's a lack of a Golden Gate Park restroom has a missing grab bar. So that that's what has been found. You have alleged thousands and thousands and thousands of violations. I I would agree with that. But if we disagree with you on the curb ramps, then why is this requiring system wide relief? Okay, Your Honor, as I said earlier, the second opinion adopts the findings of fact of the first opinion. And that's a footnote three of the second opinion. So all of the findings of fact in the first opinion are actually incorporated and adopted in the second opinion. What I was just reviewing is there's 400 ADAG violations in the city's libraries and recreation facilities. And then the next category of found and admitted barriers would be the curb ramps with the lip at the bottom. And that's the design from 1992 to 2004. And during that time, the city constructed 4,700 curb ramps. Okay, now the focus of the prior opinion was on program access. And the Ninth Circuit affirmed, a previous panel affirmed, the district court's determination that plaintiffs didn't establish that the city did not provide program access. That's correct. But these findings of fact from the first opinion support new construction and alterations violations in this instance, Your Honor. And so these curb ramps were constructed with the lip in violation of ADAG between 1992 and 2004. And that's at page 1206 of the question about the curb ramps, though. Yes. So you are invoking 28 CFR 35.151I. And it says the street is to be altered to make it more usable for the general public. It must also be made more usable for those with ambulatory disabilities. So there's a dispute between the city and you as to what qualifies as an alteration, right? You're saying resurfacing affects the usability, so any resurfing is an alteration. The city is saying, no, the alteration has to affect the usability of the street to pedestrians. And the DOJ's interpretation of that regulation is consistent with the city, right? If a pedestrian's, Your Honor. And that's covered in Kinney v. Murisala. So when the street is altered in usability, that triggers the obligation to install curb ramps. Now, when I'm talking previously about the 4,700 curb ramps, those don't pertain to resurfacing. That's just a design standard that they were using on a regular basis when they put in a curb ramp. During the period between 1992 and 1994, when the city constructed all of its curb ramps with a lip, they installed 598 curb ramps. But Kinney didn't address the question that's before us, did it? Kinney says that it's consistent with the city's view that in order for something to qualify as an alteration, it has to affect the pedestrian crosswalk. Because it has to affect not only cars, but pedestrians. Kinney says if a street is improved so that it has improved function for vehicles, that triggers the obligation to install curb ramps. But it didn't address the question of whether pedestrian crosswalks had to be affected or not, right? That wasn't before that addressed. Okay. Turning back to the next area of Founder admitted violations, he did not use ADAC for parks, playgrounds, and recreation areas in the design and construction of those. And that's at 74 F Sub 3rd at 1217. And again, the first opinion's findings of FAFSA incorporated in the second. From 2000 through 2011, the And for those new playgrounds, according to prior findings of FACT, they did not use ADAC as a design standard. Okay. And then the final category is the 30 ADAC violations from the main library, St. Mary's Playground, and the Golden Gate Park restroom, which is from the more recent 2021 opinion. And when you add all those together, 400, the 598 that the city built back in 1992 to 1994 with LIPS on the curb ramps, and the 77 playgrounds, and the 30 violations from the recent opinion get up above 1100. These violations... Oh, your papers are very loud. They're in the microphone when you... Oh, sorry. So we can't hear Mr. Wallace as well when you're ruffling the papers in the courtroom. Okay. So maybe we could turn down the volume a little. The violations are widespread. They are at locations throughout the city. And they do stem from the city's policies and practices in that the city admitted that it did not use ADAC as its design standard for parks, playgrounds, and outdoor recreation areas. And also, the city had a defective curb ramp design for 12 years and has not remediated those curb ramp LIPS. So there's... Have members of the class encountered all of these barriers? I mean, that's one of the questions I'm struggling with is in terms of, is there a violation if the barrier hasn't been encountered? Yes, Your Honor. And that's actually covered in Chapman. If you are threatened with encountering a barrier... Okay. All right. So you don't have to encounter the barrier to have injury in fact, and also you don't have to encounter the barrier to make out the statutory violation. If you use the facility and it contains ADAC violations, you're entitled to have those removed. And here we have found ADAC violations, at a minimum 30 of them in these three facilities. We believe when you look at the findings of fact of the first opinion, it's clear that there are more than a thousand, especially these curb ramps. So there's a large body of other evidence that the district court judge did not address in its second opinion, and these are 18 facilities, right? There's the botanical gardens, there's 10 recreation centers, there's six branch libraries in a playground where our experts identified ADAC violations, and those were raised with the court, but those facilities were not addressed in the second opinion. And that was a very substantial body of our evidence that the district court judge just simply disregarded. So under 28 CFR section 35.151C5, ADAC violations in your altered facilities have to be removed. And Pierce and Long and Anton and Eddie from this court, which are cited in our papers, also hold that ADAC violations should be removed and injunctive relief should issue where specific ADAC violations are found. We believe that Pierce is very closely on point here. There was a first trial, there was a passage of years that elapsed, and even though the district court judge and Pierce found that there was a lack of full ADA compliance, it declined to declare an ADA or California civil code violation or order injunctive relief. And Judge Fletcher, writing for this court, said this decision cannot stand, and ordered relief in the following form, which we believe would be a useful model here, and it's at page 1226 of the Pierce decision. And in that instance, the court found that there were ADA violations and that injunctive relief to the class members was appropriate in the form of further fact-finding to determine the current condition and location of violations in the county's prison facilities, and that any such violations of ADAC and barriers of that nature be remediated. Can we talk about the scope of your relief, please? Looking at your permanent injunction proposal, as well as what you stated in the joint pretrial statement in the district court, you effectively want receivership for curb ramps going 10 years, having a survey and a plan be submitted to the court, and then having the court and the special master resolve disputes that you have as to every curb and curb ramp within the city. And then for sidewalks, the same thing, a plan with the... Actually, after the 10 years, you want this inspection and repair process on a 15-year cycle for 25 years minimum. And then you also want a special master or the court to resolve any disputes that the plaintiffs have as to the city's plan. Same thing with crosswalk survey and plan. You want a special master or court to resolve disputes that you have for a 10-year remediation period in joining the use of current guidelines for paving and accessibility compliance, a survey of all the parks, also wanting the parties to negotiate any individual disputes, having the court or a special master resolve those, looks like also over a 10-year period, and then surveying each facility that is newly constructed or altered before project closeout, and having the plaintiffs and plaintiff's expert approve any of those alterations or construction. So it seems fairly broad relief. Currently, if you look your honor at Appellant's opening brief at page 48, you'll see that we propose that a remedy that's in line with what this court issued in Pierce v. County of Orange, which is just that there be further fact-finding to determine the current location of ADAG violations in the city's facilities, and that such violations be remediated in accordance with section 35.151C5. I'm going to reserve the remainder of my time. All right, I was going to let you finish responding to Judge Coe, however. And if I could just add to that, we do believe that there are categories of barriers that could be enjoined by this court at this point, and that is the 400 admitted ADAG violations. My issue with that is that the district court had found that the evidence as to when the curbs were altered, it didn't show whether it was after 1992 or before 1992, and so it wasn't compelling. So, I mean, I disagree with her ruling on the statute of limitations, but I think don't we have to defer to her findings of fact? Your honor, at page 1206, the district court of the first opinion, the district court finds that this curb ramp design was used between 1992 and 2004. These are all newly installed curb ramps, and class members are at risk of encountering them. And therefore, you know, there is, we believe, a pretty clear obligation to bring those up to ADAG pursuant to section 35.151C5. So, yes, there is a finding that these are new curb ramps, your honor. Okay. Thank you, and I will give you a couple minutes for rebuttal. All right. Mr. Emery.  Deputy City Attorney Jim Emery for the city and county of San Francisco. The question before the court, the court asked us to focus on is the appropriateness of injunctive relief. The district court has broad discretion in determining the propriety of injunctive relief and the scope of injunctive relief. So we need to decide whether the court abused its discretion in deciding that system-wide injunctive relief was not called for in this case. The district court based that determination on two separate and independent reasons. The first was that the sole class representative, Ms. Corolla, had not proven that she had encountered any violations of ADAG, which is the only issue on remand. Ms. Corolla's trial testimony is very scant. It's only 14 pages, and you read her testimony. She did not establish any, that she encountered any violations of ADAG. Her testimony does not require the trial court to find that Ms. Corolla encountered violations of ADAG. Isn't that inconsistent with Melendrez? With Melendrez, it says it doesn't matter if the named plaintiff loses on the merits of her claim, as long as the injury is the same as the other class members and the redress of, the redress would basically resolve any of the violations for the entire class. And I think that would be the case here, right? If you were to make any of these facilities accessible, it would remedy the injury of the entire class. That's not how I read Melendrez. In Melendrez, the court said, well, there are multiple class representatives in Melendrez. The Rodriguez's, who were the only named plaintiffs, who were stopped outside of a sweep, they had not established a constitutional violation. The other named plaintiffs, who were stopped in the context of a sweep, had established constitutional violations. And the reason why the injunction that the district court had imposed in that constitutional violations that the class members that weren't class representatives had established outside of the sweep were pursuant to the identical policy that the named class members had encountered in the sweeps. The sheriff's department in Melendrez had a single policy that applied both to stops during sweeps and stops during other sweeps. Since the named class members had established a constitutional violation pursuant to this policy, the entire scope of that policy was properly the subject of class-wide relief. So I see Melendrez as teaching that, consistent with Lewis v. Casey, that the named class member has to establish a constitutional violation. And if so, then class-wide relief can be appropriate to the extent class members' injury is attributed to a policy and practice that reaches other class members. But there were violations of ADAC found by the district court. And, obviously, they're threatening to injure members of the class. So why shouldn't there be a narrow injunction? If we weren't to require system-wide relief, why wouldn't a narrow injunction aimed at remedying those particular violations that were found be appropriate? The class action is incredibly powerful, as we know, and different than an individual action. Class actions are directed to remedying policies or practices that have injured the class representative. The court found there was no policy or practice, efficient policy or practice,  And, therefore, the class action in this case is an improper vehicle for addressing isolated departures from ADAC that occurred throughout San Francisco's 49 square miles, 220 park facilities, 2,000 miles of sidewalks. There was no policy responsible for those isolated violations. That's what the court found. The court found San Francisco has a robust and impressive infrastructure to ensure public construction projects are constructed or designed and constructed properly. In the absence of a policy deficiency, the Lewis case, Armstrong v. Davis, Armstrong v. Schwarzenegger, which were the same case, actually. Let me ask you a question. In Antoninetti, we found that where a district court didn't enter an injunction based on ADA violations, that that was an abuse of discretion. So back to Judge Wardlaw's question, she's not saying you should be subject to a system-wide relief injunction. She's saying why not order remedy of statutory violations that the district court found, a narrowly tailored one. Why wouldn't the city stick to that? Irreparable harm is presumed when there's a civil rights statute violation. Antoninetti was an individual case. San Francisco agrees that if the individual named plaintiff had established an ADAG violation, that those violations would be an appropriate subject of injunctive relief. But the class vehicle addresses policies and practices. It's like you're tipping the nature of a class action on its head. If the requirement is that you have to have separate, the individual plaintiff has to separate the very injury that was found in the case, why not just bring an individual case? She was found to have standing. She was found to be a legitimate representative. I understand this from all the prior iterations of this case, representative of the class. And they were found to be violations, actual violations, threatening harm to members of the class. Why can't that be remedied through the class action? Because Lewis versus Casey says that the remedy has to be connected to the policy that has caused the harm to the class representative. It's a question of scope. Let me ask you this, counsel. If she had encountered, let's say, one single violation, let's take the park. Would you view Melendez as permitting injunctive relief for claims other than that one single violation that she personally experienced? I mean, isn't that akin to the Melendez situation? I'm sorry. I didn't catch the question, Your Honor. So let's say she did encounter a violation, but with regard to one single location. Would you still take the position that injunctive relief is not warranted? No. If the named plaintiff encountered a single ADAG violation or more ADAG violations, the named plaintiff would be entitled to an injunction requiring correction of those violations, just like in the Antonetti case. Would the violations have to be limited or would the relief have to be limited to those that she personally experienced? If the trial record established that the class was harmed by the same deficient policy and practice that caused the hypothetical harm to the named plaintiff, that is the force and power of class action. Then that policy and practice and every harm caused by that policy and practice to the class can be the subject of relief. So in other words, if she encountered a violation at the park, then injunctive relief with regard to all these other locations and all these other violations would be permissible under Melendez. The missing piece in the court's hypothetical, which is in Melendez, is the identification of a policy or practice that is the cause of the injury to the named plaintiff. I know that. I'm giving you a hypothetical to see the distinctions between this case and Melendez, if any, a distinction that's well-reasoned and that makes sense. So would you say, if she had encountered one violation just in the park, that there's no overarching policies and practice that would allow relief on all of the other violations? Would that be your position? Well, that would depend on the findings of the district court. In this case, the district court found that there was no systemic deficiency in San Francisco's policies and practices. Can you point me to – I have Lewis in front of me. Point me to the page that says that in a class action, if individual violations of a civil rights statute or statute are found, they cannot be remedied in a class action. Because I think you're not – or I disagree with your reading of Lewis. Lewis just says that the remedy has to match the scope of the injury. And there they were talking about literacy accommodations and saying, look, what was required here was not going to help people who don't speak English. It was not going to help people who are in lockdown. So the remedy didn't fit the injury to the class. I don't see – for the general proposition that injunctions have to – the scope of the injunctions have to match the injury and remedy the class's harm, I would agree with you. That's what Lewis says. But I don't see any support. So can you point me to a page that I could look to or specific language in support of your position? Let me ask you another question while you're looking for that page site. We don't know whether the district court – the opinion doesn't address the eBay factors for injunctive relief. Should we remand based on that just to know whether the district court considered all the relevant eBay factors? Sorry, I've asked you two questions. Go ahead. Go ahead. I think on page – volume one of the excerpt of record starting on page 52, the court does engage and address the factors. The court cited winter, the four factors for injunctive relief. In – going back to Lewis v. Casey, the class and the evidence before the district court did show that people in lockdown, that people for whom English was their second language had suffered injury, but only one named plaintiff, Bartholick, had suffered injury. And that's starting on page 358, 518 U.S. 358. Only one named plaintiff, Bartholick, demonstrated injury, and the source of that named plaintiff's injury was the failure to provide services to someone who was illiterate. Therefore, the class-wide relief had to be tied to the injury that the named plaintiff who was injured had established. That's how I read Davis, and then the two Armstrong cases reinforce that. If there are no further questions, San Francisco submits. Right. Thank you, counsel. Mr. Wallace, I'll give you a few minutes. Okay. Yeah, we concur with the comments about Lewis v. Casey, from your honors. We don't see any application of that here. Ms. Corolla's statutory rights have been violated. She's entitled to use a main library that does not contain ADAG violations, and she uses that library frequently and is therefore threatened with encountering them. That's enough harm. She also has encountered ADAG violations at Alamo Square Park Playground. This, of course, ties into what I was referring to earlier. In the district court's first opinion at page 1217, the district court found that Mr. Jensen, the city's access official for parks and playgrounds, did not use the ADAG in the design and construction of playgrounds. And so that's why you see the St. Mary's Playground example where Ms. Kimbrough couldn't take her child to the playground. It was found not to comply with ADAG, right? And it's further corroborated by the experiences of the class members and Ms. Corolla with Alamo Square Park, Holly Park, and the Children's Playground at Golden Gate Park. And it all comes from the fact that the city was not designing and constructing its playgrounds in accordance with ADAG, and that's at 74 F-Sub 3rd at 1217. Now, on the curb ramp design at page 1206 of the first opinion, which is incorporated in the second, the district court found, accordingly, non-federally funded curb ramps were built with a lip while federally funded curb ramps were not. So there is a factual finding, Your Honor, that these were new curb ramps that were being built wrong. And we've provided the court with the citation to the record in our reply brief. It's around page 25, 22. There's a chart of how many curb ramps the city builds per year. All of those were being built with lips between 92 and 94. And so we do see widespread violations on our side here, and we do respectfully request that the court follow the structure of the injunction in Pierce v. County of Orange, where Judge Fletcher said, yes, there are violations. We need to determine the scope of the violations on remand with more fact-finding. And that is especially appropriate here because of the regulation, 28 CFR 35.151C5, which says, newly constructed or altered facilities must be brought up to speed with ADAG. And the city's got a lot of facilities, and we know that the policy and practice has been one of failing to follow ADAG scrupulously. The parties do disagree about the scope and number of those violations, but there is very substantial evidence in the record and in the court's findings when you take the first opinion and the second opinion together that supports the type of injunction that this court issued at page 1226 of the Pierce decision. All right. Yes, submit. Thank you. Okay. Thank you, counsel. Corolla v. City and County of San Francisco will be submitted, and this session of the court is adjourned for today. I thank both counsel, especially for being here in person.
judges: WARDLAW, NGUYEN, KOH